FILED
UNITED STATES DISTRICT COURT CLERKS OFFICE

DISTRICT OF MASSACHUSETTS 10 AUG 10 P 4: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

PLAINTIFF                                         Civil ACTION No _____

Nekita P. Lamour
645 Cross St.
Malden, MA 02148
        V
DEFENDANT' S NAME

Cambridge Public Schools
159 Thorndike St.
Cambridge, MA 02141

### Parties

1. The plaintiff Nekita P. Lamour is a resident of Malden, Middlesex county, Massachusetts and a citizen of the United States.

2. The defendant Cambridge Public Schools is located in Middlesex County, Cambridge, Mass.

### Jurisdiction

3. This court has jurisdiction over this matter pursue to 28 U.S .C

### Facts

4. **On September 1,1981** Nekita Lamour was hired by the Cambridge Public Schools as a Haitian Bilingual Program Teacher at the newly merged New Alternative School (NAS).

   On February,8 1984 tenure was recommended by Graham/Parks School Principal Dr. Leonard Solo ( was tenured).
   On September 1, 1984 started working as a tenured teacher for the Cambridge Public Schools.

5. Facts continued...
**From 1981 to 1992** – Plaintiff Nekita Lamour taught grades K-8, K-5, 1-4 of the Haitian Creole component of the Bilingual program @ NAS that will be later called Graham/Parks Alternative School. .

   **From September 1992 to June 2004** - Plaintiff Nekita Lamour was transferred by previous Bilingual Department director, Joseph Fernandez to teach English as a Second Language (ESL) to international and immigrant students from all over the world at the Harrington School in East Cambridge - a school that houses the Portuguese Bilingual program. Taught 5 to 8 grade levels each year until 2004.

   **January 2000** - Plaintiff voluntary changed her schedule from January 2000 to December 2005 to pursue professional endeavors among them a Masters in Theological Studies at the Weston Jesuit School of Theology(now merged with Boston College) - Graduated in May 2005

**January 2000 to June 2006**  Plaintiff started working voluntarily on a .67 schedule (3 days a week ). Nekita Lamour worked .67 (3 days a week ) from January 2000 to June 2002.  Around  Fall 2002 , plaintiff started working .80 schedule - 4 days a week  until December 2005.  January 2006 was asked to work full time 5 days a week.  May 06 plaintiff told supervisor Dr. Mary Cazabon that she wanted to continue working full time.  Dr. Cazabon replied around the line that former Superintendent Dr. Fowler Finn said there was no money to hire her full time and offered her a para professional position at less than half of my teachers' full time salary.  See supervisor's e-mails.

**June 2003-**  Harrington School closed and the King Open occupied the same building with new principal and staff - Taught at the King Open during 2003-2004 school year -

**Fall 2004**  Transferred to the Tobin School - one of the largest schools in the city with a significant  population of ethnic minority students such as African American, Black, and South Asian students On a .80 schedule (4 days a week) from September 2004 until mid January 2005, plaintiff worked as an ESL support staff  in a 3-5 Sheltered English Immersion (SEI ) classroom with another teacher.  Having been denied a sabbatical, plaintiff took an unpaid professional leave from January 2005 to May 2005 to complete  last semester at the Jesuit School of Theology (WJST).  Fall 2005, returned to teach with that same teacher.

**January 9, 2006 - June 2006**  Due to an oversized 3/4/5  combination,Bilingual Department's program director, Dr. Cazabon asked plaintiff to take over a diverse 5th grade class comprised of seven students ranging from a Somalian refugee student to 2  Harvard visiting scholars' children. A Korean student came for 6 weeks. A Haitian student arrived in February or March'06. I ended 05-06 year with 8 students. On May 2006, plaintiff conveyed to Dr. Cazabon that she wanted to return full time for 2006-2007 school year, the Bilingual Dept. director responded around the line that the superintendent said there was no money to hire me full time. However, in summer 2007 the Cambridge Chronicle revealed that the school department returned around  $600,000 to the city. Moreover, other teachers who had worked part time for childcare or other reasons are always allowed to come back full time.

**September 2006 - June 2007 -**  Dr. Cazabon, the Bilingual Dept. director obliged plaintiff to work .80 salary with a 8:00-1:00 schedule five days a week. Human resources, the Cambridge Teachers' union known as CTA, and other administrators ignored numerous letters  plaintiff wrote to give her a full time work schedule with appropriate salary. After writing to the assistant superintendent on October 2006,  plaintiff was assigned to work as a " floating" support teacher in grades 3-7 classrooms while teaching a regular 5th grade schedule with the same .80 salary and less prep time which - a schedule or assignment that full time teachers did not have.  The teacher who shared my classroom had a full time schedule and salary, but was responsible to teach four (4) 6th graders only, and my three (3) 5th graders for three (3) 45 minute periods a week.

  Aside from teaching , plaintiff also, helps students whether or not they are in her class to obtain after school and summer programs, receive gifts from Globe Santa, and almost every resource she knows will help students and their parents succeed in this culture and society. Going to the housing projects to bring and get summer and after school applications, bring students to the library when she sees them in front of the TV did not receive support from the Cambridge Public Schools administration.

6.  Facts continued

**Evaluations**

**December 11, 1981 to February 2006** - Evaluations were mostly by the Bilingual Program coordinator or its director. At the G/P (1981-1992) school principal Dr. Leonard Solo directed and/or was involved in many evaluations. Plaintiff had mostly 5s (Highly Competent) and 4s (Commendable) some 3s - (satisfactory ) but overall good evaluations with room for improvement in classroom management which plaintiff had managed by getting volunteers and interns from Harvard, MIT, Lesley, and area universities to provide small group and/or individual instructions. She also worked closely with the Cambridge School Volunteers. Except for 1984-85 school year, the only year she received a negative evaluation, most of my evaluations followed that pattern - Evaluations are usually 1to 3 pages. For some 3 or 4 years, peer evaluations were signed by school administrator.

**February 2006- April, May,  2007** - Received close to 40 page negative evaluation by two Bilingual Department staff that led to my termination. On February was placed on Corrective Action after an evaluation done by Teacher –in Charge Dorothy Obrien.

**September 2006 to May 2007**- Dr. Coreen Varon- Green began evaluating the plaintiff. .Evaluation procedures did not follow evaluation methods. She walked in plaintiff's class unannounced. Except for once in October 06 in presence of  CTA's president, plaintiff had no pre and post conference before observations and after observations. Feedback to evaluation (s) was not submitted on a timely fashion. Dr. Varon was unprofessional in her behaviors towards me.
At times she points her fingers at plaintiff, other times she bites her teeth when talking to plaintiff. Most of the time Dr. Varon-Green did not use her name when addressing to her or talking with students about me.

Feeling hopeless that a dedicated, committed educator like the plaintiff should not be treated in such inhumane fashion, on July 30, the day plaintiff was supposed to sign settlement package at the lawyer's office, she  hand delivered a letter to the former Commissioner's of  Education office and in Room 280 at the State House. Plaintiff  was told that the State couldn't get involved. At the State House, she received a referral package, but was not able to get a lawyer from any of the sources.  On July 31st 2007, Nekita Lamour received a registered mail that plaintiff picked up at the post office on August 1st.  Plaintiff brought a copy to the Department of Education the same day, called and followed up with a letter. See exhibit.

**August 28, 2007**- Plaintiff hand delivered a petition for arbitration to the Department of Education located in Malden and indicated she could not proceed to formal legal procedures such as hearings because she had no lawyer. She also wrote a request and inquiry for employment. Plaintiff did not hear anything until I wrote again on August 08.

**August 9, 2007**- Plaintiff filed a discrimination complaint at MCAD  - Cambridge Public Schools responded on September 6 '07. She also submitted to MCAD evidence of a competent and engaged and educator.

**March 27, 2008**- Plaintiff submitted her  rebuttal  to MCAD with more exhibit of a leader in the field.

August '08 Plaintiff received a response saying that her letter to then Acting Commissioner Nelhaus was never received and my arbitration submitted in August 07 was submitted too late- Wrote back and sent evidence that my request for arbitration was submitted on time- Called several times thereafter, but never received any response.

February 09 - Filed a complaint to Mass Board of Overseers against Atty. Joel Suttenberg whom plaintiff hired on May or June 07 to handle wrongful dismissal termination procedures- Was told over the phone on April 09 that plaintiff's case can not be pursued. Attorney Suttenberg has not done anything unethical. Plaintiff found him very intimidating when he pressured her to sign an incompetency paper after 25 years as a tenured teacher with positive evaluations until aforementioned Dr. Cazabon started a termination procedure in 2006. Surprisingly enough, the CTA did not act on my behalf. Two years later Atty. Suttenberg was billing plaintiff close to 5K after she paid him over $4,000. See exhibit.

September'09- Received a letter from MCAD that was my case was dismissed. There was no probable cause.

October 23 '09- hand delivered a letter for the Commissioner of Education

**November'09-** called two weeks later to follow up on that correspondence- left a message- As of 12-11-09, my call has not yet been returned.

**December'09**- Hand delivered a packet containing a letter with supportive document to Secretary of Education in Ashburton Place - E-mailed, called twice. No one responded.

**February '10** - Snail Mailed the Department of Education

**May 2010** - Hand delivered brochures and reflections on a Saturday Pilot Project at the Department of Education

**May 2010**- Received a Dismissal and Notice of Rights from EEOC

> In summary, between March 06 and May 2010- plaintiff had written, hand delivered mail, spoken, met with a number of staff and high levels administrators about the above unjust dismissal procedure and received no assistance. Plaintiff is arguing and demonstrating that she is a caring leader in the field of English Language Learners (ELL). She is appealing to the Court to help her get her credibility back and solve this dismissal matter.

7.  Relief that Plaintiff is seeking:

A.  To inform the Commissioner Department of the Elementary & Secondary (DESE) that my dismissal letter was not mailed on June 27, 2007, but rather on July 30, 2007. A copy of the registered mail envelope was hand delivered. Records of plaintiff's signed receipt should also be in my Human Resources (HR files). Based on the June 27, 2007 date, the legal Department is stipulating that I was late in submitting my request on August 28 and has not accepted my request for arbitration. That tardiness stipulation is not true.

B. The Cambridge and/or Massachusetts Teachers' Association (MTA) pays a lawyer of plaintiff's choice for the mediation process and restoration of my career, credit and everything to ascertain plaintiff's professional record is clear of any wrong doings; that MTA/CTA reimburses the lawyers' fees plaintiff paid in 2007 and other legal expenditures that incurred with this termination.

C. The 20% balance of  salary that plaintiff was deprived of during 2006-2007. For an entire year, plaintiff was given an 8:00 A.M to 1:00 P.M  (0.80) schedule from a school day that ended at 2:00 P.M.  Plaintiff's essentially worked full time. Like many teachers, in 06-07, Nekita Lamour took home assignments to correct, stayed in after school staff meetings, met with parents and other teachers, did all the "leg work" to get students in summer and after school programs, and performed myriad other tasks that come with teaching.  Plaintiff also waited many afternoons for students to be picked up when the other teacher left or was not in the classroom that both them shared.  Even on a full time schedule, good teachers like plaintiff work s in their sleep, on vacation, in the beach, everywhere.  Teaching for plaintiff is a vocation, a way of being, not just a job.  In addition, plaintiff does provide outreach and referral to the students' parents.  Therefore, albeit a 0.80 salary schedule, plaintiff was carrying a full time work load.  The Cambridge Public Schools agreed with the Bilingual Department's director to inequitably give plaintiff a .80 schedule. She apparently did not want plaintiff to receive her full salary schedule. Although she worked full time, plaintiff was only paid me 4/5 of my salary scale. CTA and Central administration ignored all plaintiff's correspondence requesting proper salary schedule as well as a regular full time (1.00) work schedule. See summary of letter

D. Full reinstatement in the Mass Retirement System of the three years plaintiff lost - 2006-2007, 2007-2008, and 2009-2010, plus any additional income deprived in the past three years and might lose until negotiations. $ 5 million for emotional distress and unprofessional abuse.

E. An apology from the City of Cambridge. Anyone, especially a dedicated public servant like plaintiff should not to be treated in such a disrespectful and unprofessional manner.

8. WHEREFORE Plaintiff a very dedicated, highly skilled and caring educator went through a humiliating evaluation, found incompetent, was asked to sign a "Change of Career" clause and resign. Plaintiff did not sign the clause. Hence Superintended Fowler Finn terminated her tenure.  The accompanied exhibits demonstrate the "clouds" surrounding the plaintiff's situation.  Plaintiff is asking the Court to intervene so she can get justice, solve this matter and peaceful ly continue her dedicated service as an educator and life long educator.

Thank you.

Nekita Lamour *Nekita P. Lamour*  8-10-10

Address: 645 Cross St.
Malden, MA 02148
Telephone: 781-321-1003